IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| DARIN J. PULST, | Cause No. CV-19-48-GF-JTJ |
| Plaintiff, | |
| vs. | ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Darin Pulst ("Pulst" or "Plaintiff") brings this action under 42 U.S.C. § 405(g) seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner" or "Defendant"). (Docs. 2 & 11). Pulst was denied disability benefits at the initial and reconsideration levels. (Doc. 9 at 111, 115). Administrative Law Judge ("ALJ") Michele M. Kelley issued an unfavorable decision on September 19, 2018. (Doc. 9 at 11–27). Defendant filed the Administrative Record on October 8, 2019. (Doc. 9).

Plaintiff filed an opening brief on December 5, 2019. (Doc. 11). He asks the Court either to reverse or remand the decision of the ALJ. (Doc. 11 at 8). Plaintiff's case is fully briefed and ripe for the Court's review. (Docs. 11, 15, 16).

## JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Plaintiff resides in Cascade County, Montana. 29 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3).

## PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits in July 2016, alleging disability beginning August 24, 2015. (Doc. 9 at 14). The ALJ identified that Plaintiff had severe impairments including left knee derangement, post status repair of anterior cruciate ligament, osteoarthritis of the bilateral shoulders, osteoarthritis of the cervical spine, osteoarthritis of the lumbar spine, and asthma. (Doc. 9 at 17). The ALJ further found that Plaintiff maintained the residual functional capacity to perform light work. (Doc. 9 at 19). The ALJ concluded that Plaintiff was not disabled as defined in the social Security Act from august 24, 2015 through the date of the decision. (Doc. 9 at 27). The Appeals Council rejected Plaintiff's appeal on May 25, 2019. (Doc. 9 at 1–6). Plaintiff subsequently filed the instant action. (Doc. 1).

## STANDARD OF REVIEW

The Court conducts a limited review in this matter. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence also has been described as "more than a mere scintilla," but "less than a preponderance." *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

## BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the

3

national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382a(3)(A), (B)).

Social Security Administration regulations provide a five-step sequential evaluation process to determine disability. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The five steps are:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante*, 262 F.3d at 954. The claimant bears the burden of proof at steps

4

one through four. *See id.* The Commissioner bears the burden of proof at step five. *See id.*

## BACKGROUND

### I.   THE ALJ'S DETERMINATION

The ALJ followed the 5-step sequential evaluation process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020. (Doc. 9 at 17). The ALJ further found that Plaintiff had not engaged in substantial gainful activity since August 24, 2015. (Doc. 9 at 17).

At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: left knee derangement, post status repair of anterior cruciate ligament, osteoarthritis of the bilateral shoulders, osteoarthritis of the cervical spine, osteoarthritis of the lumbar spine, and asthma. (Doc. 9 at 17).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 9 at 18).

At step four, the ALJ found that Plaintiff possessed the following residual functional capacity:

> to perform a range of sedentary and light work as defined in 20 CFR 404.1567(a) as follows: The claimant is limited to lifting, carrying, pushing and pulling 10 pounds occasionally and less than 10 pounds

5

frequently. The claimant is limited to walking and standing about 6 hours in an 8-hour workday. The claimant is limited to sitting about 6 hours in an 8-hour workday. The claimant must be able to change positions during normal breaks and every two hours. The claimant cannot reach over should level with the left upper extremity and cannot reach overhead with the right upper extremity. The claimant is limited to frequently reaching in front and laterally with the bilateral upper extremities from the shoulders, but there is no limitation in reaching or bending the elbows forward. The claimant is limited to occasionally pushing and pulling with both upper extremities and the left lower extremity. The claimant is limited to frequently handling, fingering and feeling with the non-dominant right upper extremity. The claimant is limited to occasionally climbing ramps and stairs. The claimant is limited to occasionally balancing, stooping, and crouching. The claimant cannot climb ladders, ropes or scaffolds. The claimant cannot kneel or crawl. The claimant must avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, poor ventilation, vibrations as well as work hazards including unprotected heights and dangerous machinery.

(Doc. 9 at 19–20). Based on this residual functional capacity, the ALJ found that Plaintiff could not perform his past relevant work as a sawmill worker. (Doc. 9 at 25).

At step five, the ALJ concluded that Plaintiff remained capable of making a successful adjustment to other work that existed in numbers in the national economy considering Plaintiff's age, education, work experience, and residual functional capacity. (Doc. 9 at 26–27). Thus, the ALJ concluded that Plaintiff was not disabled. (Doc. 9 at 27).

## II.     Plaintiff's Position

Plaintiff argues that the ALJ erred in the three following ways: (1) failing to set forth the weight granted the surgical findings from neurosurgeons Dale Schaefer, Benny Brandvold, orthopedic surgeon John Michelotti, and the treating physicians, without meeting the requisite standards; (2) failing to meet the specificity requirements of *Brown-Hunter v. Colvin*, 359 F.3d 487 (9th Cir. 2015), in order to deny Pulst's descriptions of his physical limitations, supported by objective tests and all treating physicians' notes; and, (3) failing to incorporate Plaintiff's uncontested impairments into the vocational consultant's hypothetical question. (Doc. 11 at 3).

## III.   Commissioner's Position

The Commissioner asserts that the Court should affirm the ALJ's decision because she properly concluded that Plaintiff was not disabled. (Doc. 15 at 2–3). Alternatively, if the Court determines that the ALJ committed an error in the analysis, the Commissioner argues a remand for further proceedings would constitute the appropriate remedy. (Doc. 15 at 9–10).

## DISCUSSION

Plaintiff argues that the ALJ erred in three distinct ways. For the reasons set forth below, the Court agrees that the ALJ improperly discounted the findings, diagnoses, and objective results from multiple treating physicians and, accordingly, improperly denied Plaintiff's claim for disability benefits. Those errors prove

7

dispositive and the Court reverses the case for an award of benefits based on those errors alone. It proves unnecessary to address Plaintiff's alternative arguments.

## I.    Legal Standard

In assessing a disability claim, an ALJ may rely on the opinions of three types of physicians as follows: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should afford each physician's opinion a certain amount of deference based on that physician's classification. A treating physician's opinion deserves the greatest weight. *Id.* ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2). An examining physician's opinion is entitled, in turn, to a greater weight than a non-examining physician's opinion. *Lester*, 81 F.3d at 830.

An ALJ should afford a treating physician's opinion deference because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). Despite this deference, a treating physician's opinion is not

necessarily conclusive as to either the physical condition or the ultimate issue of disability. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.").

An ALJ should reject a treating physician's opinion only under certain circumstances. *Lester*, 81 F.3d at 830. An ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" when discounting a treating physician's uncontradicted opinion. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotations omitted); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ may accomplish this task by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ must do more than simply offer her conclusions. An ALJ must set forth interpretations and explain why those conclusions, rather than the doctor's, are correct. *Reddick*, 157 F.3d at 725. A non-examining physician's opinion cannot constitute, by itself, substantial evidence that justifies the rejection of a treating or examining physician's opinion. *Lester*, 81 F.3d at 831. A non-treating, non-examining physician's findings can amount to substantial evidence if other

9

evidence in the record supports those findings. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

An ALJ may discredit a treating physician's opinions that are conclusory, brief, or unsupported by the record as a whole or objective medical findings. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2001). An ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1980).

The uncontroverted opinions of the claimant's physicians on the ultimate issue of disability do not bind an ALJ, but an ALJ cannot reject those opinions without presenting clear and convincing reasons for doing so. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). A court can reject a treating physician's controverted opinion on disability only with specific and legitimate reasons supported by substantial evidence in the record. "In sum, reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988) (internal citations omitted).

## II.    Application to Pulst's Claim

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 9 at 20). The ALJ

found further, however, that Plaintiffs' statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with medical evidence and other evidence in the record." (Doc. 9 at 20). In making this finding, the ALJ considered the opinions of state agency medical consultants, treating physicians, and testimonial evidence. (Doc. 9 at 20–25).

Plaintiff claims disability based on a compound set of symptoms including neck pain, back pain, left knee pain, right shoulder pain, left shoulder pain, right arm pain, and respiratory issues. The ALJ analyzed each symptom in turn, noting briefly the evidence considered in finding that Plaintiff still could perform work. (Doc. 9 at 20–25). In the case of Plaintiff's left knee pain, cervical osteoarthritis, lumbar osteoarthritis, and shoulder pain, the ALJ improperly discounted the findings, diagnoses, and objective results from multiple treating physicians and, accordingly, improperly denied Plaintiff's claim for disability benefits. (Doc. 11 at 4–14 (summarizing the lengthy medical findings in the administrative record)).

Regarding Plaintiff's left knee pain, the ALJ noted Plaintiff's extensive history of left knee pain including multiple surgeries and continued treatment via injection that did not fully alleviate knee pain. (Doc. 9 at 20). The ALJ further noted that treating physicians diagnosed osteoarthritis of the lateral compartment of the left knee requiring ongoing treatment. (Doc. 9 at 21). The ALJ dismissed the surgical evidence, diagnosis evidence, and treatment evidence based on the

assertion that "most" physical examinations found Plaintiff had a good range of motion and that only a "few" physical examinations found the claimant had discomfort in range of motion testing. (Doc. 9 at 21). The ALJ provided no citation for this back-of-the-envelope statistical analysis and provided no justification for providing greater weight to certain examinations above others. The ALJ further provided no justification for why those physical examinations would outweigh the other evidence.

The ALJ compounded the mistaken analysis of Plaintiff's left knee pain when the ALJ provided disproportionate weight to non-treatment considerations such as Plaintiff's apparent ability to "care for his child" or ride an exercise bike for 15 minutes. (Doc. 9 at 20). In weighing those non-treatment considerations, the ALJ failed to note that a treating physician recorded in medical records that Plaintiff complained that he had difficulty carrying his child because of arm weakness and even had dropped his child when his arm gave out. (Doc. 9 at 646–50). The ALJ further failed to note that Plaintiff's exercise bike activity continued at the request of his treating physician, and that medical examination continued to show numbness, muscle spasms, and muscle pain despite that limited exercise. (Doc. 9 at 745–46). The Commissioner's invocation of Plaintiff's ability to "attend church" as evidence that Plaintiff is not disabled cannot contravene the objective medical findings of treating physicians. (Doc. 15 at 5–6). "It is an error for an ALJ

12

to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Regarding Pulst's cervical osteoarthritis, the ALJ noted evidence of pain, diminished range, and issues with marginal spurs and denervation. (Doc. 9 at 21). Treating physicians consistently confirmed these findings through examination and tests. (Doc. 9 at 21). The ALJ discounted the consistent evidence of disability with two pieces of evidence. First, the ALJ noted that a treating physician Benny Brandvold, MD, opined that radiographic findings from one test "do not *always* correlate" with the symptoms of neck pain and upper extremity numbness. (Doc. 9 at 21 (emphasis added)). The ALJ failed to note that another treating physician, Ryan Boer, MD, had found that Plaintiff's pathology was consistent with neck pain as well as upper extremity weakness and numbness. (Doc. 9 at 657–60). The ALJ provided no justification for weighing statistical speculation that findings "do not always correlate" with a symptom over the finding of another physician with a definitive diagnosis. The ALJ next relied on the above-described flawed testimonial evidence that Plaintiff retains the capability to care for his child. (Doc. 9 at 21). The ALJ failed to show why these isolated and unclear pieces of evidence would outweigh the conclusive and objective findings of treating physicians both mentioned and unmentioned in the opinion.

13

Regarding Plaintiff's lumbar osteoarthritis, the ALJ noted complaints of pain consistent with extensive medical examinations by treating physicians. (Doc. 9 at 22). The ALJ found "most physical examinations" diagnosed reduced range of motion, mild to average pain consistent with Plaintiff's claims. (Doc. 9 at 22). The ALJ noted that a radiology report found degenerative disc disease, and that further imaging identified a right lateral recess disc extrusion with mass effect on the nerve roots. (Doc. 9 at 22). The ALJ discounted that consistent evidence of disability after noting that a "majority of the claimant's physical examinations" found normal gait and station. (Doc. 9 at 22). It remains unclear why this isolated finding would counteract the overwhelming evidence otherwise described. The ALJ further discounted the evidence of disability with a brief note that Plaintiff could ride a stationary bike and lift his child into a car seat or bathtub. (Doc. 9 at 22, 58, 62). The ALJ again failed to show why these isolated pieces of evidence would outweigh the conclusive and objective findings of treating physicians both mentioned and unmentioned in her opinion.

Finally, the ALJ's analysis of Plaintiff's shoulder pain suffers from the same flaws. The ALJ identified an extensive medical history of ongoing pain, numbness, and arm weakness in both shoulders. (Doc. 9 at 22–23). The ALJ dismissed the evidence from treating physicians based on some improvement in the left shoulder

14

range of motion in certain tests, some improvement in right arm strength in one test, and the non-treatment evidence that Plaintiff could carry his child. (Doc. 9 at 22–23). The ALJ again failed to show why these isolated pieces of evidence would outweigh the conclusive and objective findings of treating physicians both mentioned and unmentioned in her opinion.

The ALJ improperly discounted the findings, diagnoses, and objective results from multiple treating physicians and, accordingly, improperly denied Plaintiff's claim for disability benefits. In rejecting the opinions of treating physicians, the ALJ needed to do more than offer different conclusions. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). The ALJ needed to set forth reasoned interpretations and explain why those interpretations, rather than the doctors' opinions, are correct. *Id.* In most cases, the treating physicians' opinions remain entitled to the greatest weight and should be adopted. *Lester*, 81 F.3d at 830.

Put simply, the ALJ must provide a good reason for the weight that the ALJ affords the treating physicians' opinions. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ's justification for granting the treating physicians' opinions such little weight remains insufficient. As explained above, the ALJ failed to explain adequality why interpretations, rather than the doctors' opinions, were correct. The ALJ accordingly erred by affording such little weight to the treating source's opinions. The ALJ committed legal error when failing to provide a good

15

reason for declining to afford any deference to the treating physician's opinions. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

## III.   Remedy

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). When the record is fully developed and further proceedings would serve no useful purpose, the Court may remand for an immediate award of benefits. *Id.* Remand for an award of benefits proves appropriate if there are no outstanding issues that must be resolved before a determination of disability can be made and if it is clear from the record that the ALJ would be required to find the claimant disabled if the ALJ properly had credited a treating or examining physician's opinion. *Id.* (citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)).

Remand for an immediate award of benefits proves appropriate here. The record is fully developed, and further proceedings would serve no useful purpose. No outstanding issues exist that must be resolved before a determination of disability can be made. It is clear from the record that the ALJ would have been required to find Plaintiff disabled from August 24, 2015, if the ALJ had credited properly the opinions of treating physicians. *See Beneke*, 379 F.3d at 593. The

16

Court will reverse the Commissioner's final decision denying Plaintiff disability insurance benefits and remand for an immediate award of benefits.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion (Doc. 11) is **GRANTED**.

2. The Commissioner's final decision denying Plaintiff's claims for disability insurance benefits is **REVERSED** and **REMANDED** for an immediate award of benefits from August 24, 2015, through the date last insured.

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 26th day of February, 2021.


John Johnston
United States Magistrate Judge